[Civil No. 2289. Filed May 22, 1925.]

[236 Pac. 722.]

# BABBITT AND COWDEN LIVESTOCK COMPANY, a Corporation, Appellant, v. MRS. DELLA M. HOOKER, Executrix of the Estate of C. H. HOOKER, Deceased, Appellee.

1. TRIAL—TRIAL COURT'S REMARKS IN RENDERING JUDGMENT NOT CONSIDERED AS FINDINGS.—Trial judge's remarks in rendering judgment cannot be considered as supplying place of findings of fact.

2. APPEAL AND ERROR — JUDGMENT AFFIRMED IF SUSTAINED ON ANY THEORY BY FACTS REASONABLY DEDUCED FROM EVIDENCE, IN ABSENCE OF FINDINGS.—In absence of findings of fact, judgment must be affirmed, if sustained on any theory of law by facts reasonably deduced from evidence.

3. APPEAL AND ERROR—TITLE TO CATTLE ASSUMED TO HAVE REMAINED IN SELLER AS SHOWN BY EVIDENCE. — Where only evidence as to whether title to cattle sold passed to buyer was testimony of unimpeached witnesses, who consummated deal, that title was not to pass before purchase price was paid, Supreme Court must assume, on appeal in action for conversion, that title remained in seller as against buyer, so that seller was entitled to possession unless third party could show superior rights.

4. SALES—IMPLIED FINDING THAT PURCHASER OF CATTLE AT FORECLOSURE SALE HAD NO NOTICE OF RESERVATION OF TITLE IN MORTGAGOR'S VENDOR HELD SUSTAINED BY EVIDENCE.—Evidence *held* sufficient to sustain trial court's implied finding, in action for

---

1. See 26 R. C. L. 1086.

conversion of cattle, sold without express reservation of title in written instrument, as provided by Civil Code of 1913, paragraph 3278, and Conditional Sales Act 1919, section 5, that defendant had no notice of reservation of title before purchasing property at mortgage foreclosure sale.

5. SALES—PURCHASER OF BUYER'S TITLE AT MORTGAGE FORECLOSURE SALE PROTECTED BY LACK OF NOTICE OF RESERVATION OF TITLE IN SELLER.—Purchaser of buyer's title to cattle at mortgage foreclosure sale, as well as from buyer directly, is protected by lack of notice of reservation of title in seller, under Conditional Sales Act 1919, section 5, even if such act superseded Civil Code of 1913, paragraph 3278, protecting all persons other than parties to sale.

6. CHATTEL MORTGAGES—PURCHASER OF CATTLE AT FORECLOSURE SALE HELD TO HAVE ACQUIRED NO TITLE SUPERIOR TO THAT OF MORTGAGOR'S VENDOR.—Purchaser of cattle on foreclosure of mortgage, executed before purchase thereof by mortgagor, acquired no title superior to that of latter's vendor under provisions covering additions to cattle described in mortgage, notwithstanding vendor's failure to reduce to writing and record agreement reserving title.

7. TROVER AND CONVERSION—ALLEGATIONS AND EVIDENCE HELD SUFFICIENT.—Allegations and evidence of plaintiff's title to and right of possession of cattle, detention thereof by defendant under claim of ownership, and demand for possession by plaintiff before suit was brought for conversion, *held* sufficient to sustain action.

8. TROVER AND CONVERSION—NOMINAL DAMAGES RECOVERABLE IN ABSENCE OF PROOF OF VALUE. — Whether damages were properly proved in action for conversion is immaterial on question of reversal or affirmance, plaintiff being entitled to nominal damages for conversion, even in absence of any evidence of value.

See (1) 38 Cyc., p. 1961. (2) 4 C. J., p. 655 (1926 Anno.). (3) 4 C. J., p. 737. (4) 35 Cyc., p. 710. (5) 35 Cyc., p. 680. (6) 11 C. J., p. 732. (7) 38 Cyc., pp. 2084, 2085. (8) 38 Cyc., p. 2088.

APPEAL from a judgment of the Superior Court of the County of Yavapai. Richard Lamson, Judge. Judgment reversed and cause remanded.

Messrs. O'Sullivan & Morgan, for Appellant.

Messrs. Favour & Baker, for Appellee.

LOCKWOOD, J.—Babbitt & Cowden Live Stock Company, a corporation, hereinafter called plaintiff,

filed suit against C. H. Hooker, hereinafter called defendant, alleging substantially that on March 20th, 1922, plaintiff was the owner and entitled to the possession of some thirty (30) registered Hereford bulls, worth $4,500, which were temporarily in the custody of the Blaney Land & Cattle Company; that defendant Hooker, with full knowledge of plaintiff's rights, wrongfully took possession of and converted the same to his own use; that demand had been made for the return of the animals, but it was refused by Hooker, to plaintiff's damage in the sum of $4,500.

Defendant interposed various motions, demurrers, and a general denial, and then raised his real defense by various pleas in bar and an estoppel. The first plea in bar alleges defendant's possession was by virtue of an execution sale under order of court, and that if there was any conversion it was made by a receiver of the court. The second is substantially to the same effect. The third denies plaintiff's ownership and right to possession of the bulls, and alleges they had been bought by the Blaney Land & Cattle Company from plaintiff, and by the terms of a certain mortgage which had been foreclosed by the court, they had been legally sold to defendant. The plea of estoppel sets up that plaintiff by its conduct was estopped from denying the ownership of the Blaney Land & Cattle Company as against defendant.

Plaintiff replied to these pleas, denying the matter set up therein, and alleged that defendant had full knowledge of plaintiff's ownership of the cattle when he took them, and recognized its rights therein. This assertion was denied later by the defendant.

The case was tried by the court without a jury. Plaintiff introduced certain evidence, and, at the close of its case, defendant, without offering any evidence, moved for judgment, which motion after due consideration was granted by the court. After

the denial of the usual motion for new trial, an appeal was taken to this court.

No findings of fact were requested by the parties, or made by the trial judge. His remarks made in rendering judgment cannot be considered as supplying the place of such findings. *Deatsch* v. *Fairfield,* 27 Ariz. 387, 233 Pac. 887; *Ollason* v. *Glasscock,* 26 Ariz. 193, 224 Pac. 284.

We are therefore confronted with the situation, so often before us, where, if we can on any reasonable view of the evidence deduce therefrom facts which, on any theory of the law, would sustain the judgment, we must affirm it. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587.

The first is as to whether title to the cattle actually passed to the Blaney Land & Cattle Company. If it did, plaintiff admits it cannot recover. The only evidence on this point is the testimony of two unimpeached witnesses, Cowden and Thurston, who consummated the deal in the first place, and they agree that the title was not to pass until the full purchase price had been paid. In the absence of any evidence to the contrary, we are bound to assume that, as between the plaintiff and the Blaney Land & Cattle Company, the title to the bulls remained at all times in the plaintiff, and it was, under the circumstances, entitled to the possession thereof, unless some third party could show superior rights.

This reservation of title, however, was not expressed in any written instrument, as provided either by paragraph 3278, R. S. A. 1913, or section 5 of the Conditional Sales Act of 1919 (Laws 1919, c. 40). We must therefore consider whether defendant had notice of the reservation of title before he purchased the property in question at the foreclosure sale. In order to establish this, plaintiff relies on two conversations between the witness Cowden, who was vice-president and manager of plaintiff, and the de-

fendant Hooker, in the presence of one Wingfield, at one of which he showed Hooker a telegram from Thurston, who was the president of the Blaney Land & Cattle Company. Nowhere in these conversations does either Cowden or Wingfield say there was any explicit statement that there was a reservation of title. The nearest approach thereto was in the following excerpts from Cowden's testimony:

"I came up . . . because I knew . . . he might feel they were property which the Blaney Land & Cattle Company had bought and paid for, and they had not paid us for the bulls.

"Question: Did you communicate that fact to Mr. Hooker? Answer: Yes, sir."

And the witness Wingfield said in regard to the same conversation:

"Well, it was in regard to some bulls that had been bought and not paid for and that Mr. Hooker and I agreed whoever got the outfit would pay for the bulls."

The telegram from Thurston reads as follows:

"1921 Dec. 11 A M 7 38 Na Minneapolis Minn 10 Ray Cowden, Herd Bldg. Phoenix Ariz I dont want bulls to leave our ranch I am making every effort possible to raise the money satisfied I will have it within sixty days but if you have to Ray take the bulls will be in Arizona within ten days E. E. Thurston Manistique Mich."

It also appears Hooker stated once or twice that he did not want the bulls to leave the ranch, and whoever took it should pay for them. The evidence shows, in addition, the Blaney Land & Cattle Company branded the bulls in their brand as soon as they were placed on the ranch, and later sold a few of them.

Can we say that on this evidence the trial court was conclusively bound to find Hooker had knowledge that the title itself had been reserved by the vendor, or was it merely notice that the bulls had not

been paid for, and that plaintiff was trying to get them returned to it, which would present a very different legal situation? We think either conclusion might have been reasonably drawn from the evidence, and are therefore bound to accept the view which must have been taken by the trial court in order to sustain the judgment, to wit, that Hooker had no notice of the reservation of title.

But it is urged section 5 of chapter 40, Session Laws of 1919, has superseded paragraph 3278, *supra,* and so it is not all persons other than the parties thereto, as set forth in paragraph 3278, but only purchasers from or creditors of the buyer, who are protected by lack of notice. Assuming for the sake of the argument that section 5, *supra,* governs this transaction, Hooker was both a creditor of the Blaney Land & Cattle Company, and a purchaser at a judicial sale of its title to the property in question. We can see no difference in principle between a purchaser direct from the cattle company, and a purchaser of its interest in the property at a judicial sale. Both are protected by section 5 of the act. *Hunter* v. *Watson,* 12 Cal. 377, 73 Am. Dec. 543; *Foorman* v. *Wallace,* 75 Cal. 552, 17 Pac. 680; *Pugh* v. *Highley,* 152 Ind. 252, 71 Am. St. Rep. 327, 44 L. R. A. 392, 53 N. E. 171; *Lusk* v. *Reel,* 36 Fla. 418, 51 Am. St. Rep. 32, 18 South. 582.

Counsel for plaintiff, however, argues that since the mortgage under which the sale was made was executed before the purchase of the bulls, its provisions covering additions to the cattle described therein could affect only the actual, and not the ostensible title of the Blaney Land & Cattle Company, notwithstanding the failure to reduce to writing and to record the agreement reserving title. And since the cattle company had no title to the bulls, even though that fact was not known to defendant, the rights of plaintiff as holder of the reserved title

were superior to those of defendant under the provision of the mortgage, and the purchase at the sale thereunder. We think plaintiff's position on this point is just and logical. The mortgage was originally taken without any reliance on the animals in question, and defendant parted with nothing in expectation of their being subject to the mortgage. It would be unjust that he should now be held by the provisions of that mortgage to secure a title superior to that of the real owners of the cattle, when he was in no way misled to his damage by reason of their failure to comply with the recording statutes. This rule is supported by eminent authority. *Fosdick* v. *Schall,* 99 U. S. 235, 25 L. Ed. 339 (see, also, Rose's U. S. Notes); *Manhattan Trust Co.* v. *Sioux City, etc.* (C. C.), 76 Fed. 658; *Myer* v. *Car Co.,* 102 U. S. 1, 26 L. Ed. 59; *Wood* v. *Holly Manufacturing Co.,* 100 Ala. 326, 46 Am. St. Rep. 56, 13 South. 954.

Such being the case, defendant could not set up his purchase at the foreclosure sale as entitling him to the property against the superior right, both of title and possession, of the plaintiff.

Defendant insists, though, that notwithstanding such may be the law, plaintiff cannot recover in this action because he did not sufficiently prove a conversion by defendant. We do not consider this proposition has merit. The pleadings and evidence show clearly a title to, and right of possession of, the property in question in the plaintiff, a detention by defendant under a claim of ownership, and a demand of possession by the plaintiff before the suit was brought. This is sufficient to sustain the action. Even in the absence of any evidence as to value, plaintiff would have been entitled to nominal damages for the conversion. 38 Cyc. 2088.

It is immaterial on the question of reversal or affirmance as to whether the damages were properly proved.

The judgment should have been for plaintiff in at least a nominal amount, and as a matter of fact it was for the defendant.

For the foregoing reasons, the judgment is reversed, and the case remanded for a new trial.

McALISTER, C. J., and ROSS, J., concur.