[Civil No. 4198. Filed October 28, 1940.]

[106 Pac. (2d) 488.]

ROSE POSNER, Appellant, v. NEW YORK LIFE INSURANCE COMPANY, a Corporation, Appellee.

204

Messrs. Lewkowitz & Wein, for Appellant.

Messrs. Darnell, Pattee & Robertson, for Appellee.

LOCKWOOD, J.—This is an action by Rose Posner, hereinafter called plaintiff, to recover certain benefits which she claimed were due her upon a policy issued by New York Life Insurance Company, a corporation, hereinafter called defendant. The case was tried to a jury, which returned a verdict in favor of defendant. Judgment was rendered thereon, and the case is before us for review.

The undisputed facts are as follows: On May 25, 1928, defendant issued to plaintiff its policy of life insurance which provided, among other things, for the payment of certain benefits to the latter in case of total and permanent disability due to bodily injury or disease. On March 9, 1929, defendant amended the original policy by a rider attached thereto, providing for the payment of increased disability benefits. In July, 1931, plaintiff made application for disability payments under the policy. Defendant paid such benefits to plaintiff from May 1, 1931, up to and including December 10, 1936, but refused to make any further payments, whereupon this suit was brought.

The defense thereto was a denial that plaintiff was permanently and totally disabled, within the terms of the policy, and an allegation that if she was so disabled it was caused by certain diseases or ailments with which she was afflicted prior to its issuance.

■ At the trial evidence was offered by plaintiff as to her condition and alleged disability. The three causes of the disability set up in the complaint were (a) a nervous breakdown, (b) arthritis, and (c) lesion of the aorta. No evidence was offered tending to sustain the claim of lesion of the aorta, and the evidence in regard to nervous breakdown was of such a nature that the jury was certainly justified in finding that it did not cause any disability whatever, nor is there any contention there was error in the presentation of this issue. The evidence in regard to the arthritis, and any disability caused thereby, was in sharp conflict. It is unnecessary that we should set it forth at length, but it is sufficient to say that it presented an issue of fact for the jury, which was resolved by it in favor of defendant. We have always held that in case of conflicting evidence, the finding of the trial court, or the verdict of the jury, is binding on us as to the facts. If, therefore, no error of law occurred sufficient to require a reversal of the trial court, the judgment must be affirmed. We examine the assignments of error in their order.

■ The first question is whether the court erred in refusing to strike from the complaint certain allegations in regard to the payment of premiums and disability benefits. It is the rule that while the granting of a motion to strike may be reversible error, the denying of such a motion, even though erroneous, is not a cause for reversing the case except under extraordinary circumstances. *MacNeil* v. *Vance,* 48 Ariz. 187, 60 Pac. (2d) 1078; *Shill* v. *Jones,* 21 Ariz. 465, 190 Pac. 77.

206

We think the facts bring this case within the rule thus stated.

■ The second is as to the alleged misconduct of counsel for defendant in making the remark before the jury, "You know that an insurance company in a case of this kind always starts with two strikes against it." The abstract of record and the transcript of testimony do not show that such a remark was made, but counsel for defendant admitted in his oral argument that he did, as a preliminary to his examination of the jury on their *voir dire,* make it, and thereafter asked each juror whether he would allow the fact that defendant was an insurance company to prejudice him in his verdict. We can see no improper conduct in the remark.

■ The third is whether counsel for defendant was guilty of misconduct in his effort to bring before the jury certain testimony which it is alleged was privileged. Defendant endeavored to show (a) by the former husband of plaintiff that he had purchased insulin for his wife and had seen her make tests of her urine to determine whether diabetes existed, before the policy was issued, and (b) certain testimony given by Dr. M. D. Cohen at a divorce action between herself and her former husband. Complaint was also made of the appearance of her former counsel in the courtroom, presumably to testify in regard to communications with plaintiff in another trial. The last point was not seriously urged in the briefs or oral argument, and what little was said convinces us that there was no misconduct on the part of counsel for defendant in regard to Mr. Milton Cohen. We consider the two other matters.

Counsel for defendant made a very earnest and strenuous effort to cause the testimony of plaintiff's former husband and Dr. Cohen to be admitted, continuing these efforts even after the court had ruled

several times that it was inadmissible, and this, it is contended, is reversible error for the reason that it caused the jury to believe there were material facts which plaintiff was endeavoring to conceal from it. So far as the testimony of the husband is concerned, we think it was admissible. In the first place, the parties were no longer husband and wife, and the general rule is that an absolute divorce places the former spouses in the same position as regards competency as witnesses as though there had been no marriage, and that each may testify for or against the other as to matters which came to their knowledge during the existence of the marital relation, unless such matters were in the nature of confidential communications. 70 C. J. 125, and cases cited. In other words, they may testify as to what was *done* by either spouse, but not as to what was *said* if it was in the nature of a confidential communication. We approve of this rule. Posner was not questioned in regard to any confidential communications, but as to acts done by him or by plaintiff during the marriage. We think the testimony should have been admitted, and if this be true, it certainly was not reversible error for counsel for defendant to attempt to convince the court thereof and make his record, even though an adverse ruling had at first been made.

█ The second question is as to the testimony which was sought to be elicited from Dr. Cohen. The application for the original policy and the rider contained the following clause:

"I expressly waive on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder all provisions of law forbidding any physician or other person who has heretofore attended or examined me or who may hereafter attend or examine me from disclosing any knowledge or information which he thereby acquired."

It will be seen that this was a formal waiver by plaintiff of privileged communications as to her physician, and was broad enough to cover any matter which Dr. Cohen might have learned by reason of his attendance upon her. *Trull* v. *Modern Woodmen of America,* 12 Idaho 318, 85 Pac. 1081, 10 Ann. Cas. 53; *Metropolitan L. Ins. Co.* v. *Brubaker,* 78 Kan. 146, 96 Pac. 62, 130 Am. St. Rep. 356, 16 Ann. Cas. 267, 18 L. R. A. (N. S.) 362. It is true that this waiver was not called to the attention of the trial court during the examination of Dr. Cohen, and if defendant were here seeking to reverse the case on the ground that Dr. Cohen should have been permitted to testify we might well hold that it waived that error by failing to call to the attention of the court the clause contained in the policy. But this is a case where plaintiff is urging that the case should be reversed because defendant insisted too strenuously on getting before the jury evidence which should have been submitted to it, but which the trial court inadvertently excluded. We think that counsel for defendant was not guilty of reversible error in his strenuous efforts to introduce evidence which was legally competent, even though he may have failed to call to the attention of the court the true reason why it was admissible.

 The next objection is that the court improperly excluded a certain document written on paper bearing the heading of the Tucson X-ray and Pathological Laboratories. This document, on its face, is a copy of a report made by the laboratory. The only testimony identifying it was that of Robert Black, who had been a technician for the laboratory. He did not claim to have made the report nor the analysis shown thereby himself or to know anything about it except that it was found in the files of the laboratory and that the physician to whom it was apparently made was dead at the time of the trial. We think that this was insufficient

to lay a foundation for the admission of the document. *Price* v. *Standard L. & A. Ins. Co.,* 90 Minn. 264, 95 N. W. 1118; *Netzel* v. *Todd,* 30 Ohio App. 300, 165 N. E. 47.

■ The next question is as to the admissibility of certain testimony in regard to the physical condition of plaintiff, and that her disability, if any, was caused by fibrositis arising from a prior existing diabetes. Since one of the defenses was that any disability from which she suffered was the result of a preexisting disease, we think the testimony was admissible.

■ The next objection is that it was error to admit in evidence two affidavits which were made by plaintiff in the course of her divorce proceedings. They were offered for the purpose of contradicting plaintiff's testimony that she had not been treated for any disease prior to the issuance of the policy, had never taken insulin, and was in good health. We think the affidavits were admissible.

■ It is then urged that the court improperly allowed Dr. Wyatt, an expert on arthritis, to use two X-ray plates to illustrate and explain his testimony. The situation out of which this objection arose may be stated as follows: Dr. Wyatt was testifying in regard to the effects of hypertrophic arthritis. In so doing he used certain X-ray plates taken of plaintiff, and in order to illustrate one of the methods of taking X-ray pictures he was permitted to exhibit to the jury and testify as to two X-ray plates taken of a patient other than plaintiff. It was expressly stated in the course of the examination that these plates were used purely for illustrative purposes, and were not X-rays of plaintiff. It is a common practice to use various objects for the purpose of illustrating evidence, and their admission is largely in the discretion of the trial court. We see no error in allowing the expert to ex-

plain methods of procedure by the use of the plates in question.

We then consider whether the incontestability clause of the policy barred any effort to show a preexisting disease. It must be observed that the defense was not that the policy was invalid because of previous existing disease, but that the disability claimed by plaintiff was not covered by the terms of the policy. This court has held that policies of this nature do not extend to and cover disabilities which have their origin in injury or disease commencing before the issuance of the policy. *Metropolitan L. Ins. Co.* v. *Reynolds,* 48 Ariz. 205, 60 Pac. (2d) 1070. See, also, *Clardy* v. *Grand Lodge of Oklahoma A. O. U. W.,* 132 Okl. 165, 269 Pac. 1065; *Norris* v. *Travelers Ins. Co.,* 148 Kan. 122, 79 Pac. (2d) 842, 116 A. L. R. 720.

The incontestability clause did not apply to the situation. This covers all the procedural errors claimed by plaintiff which we consider it necessary to discuss.

Upon a careful examination of the whole record, we are convinced that the vital issue was whether plaintiff was totally disabled by causes which brought her within the terms of the policy. The matter was presented to a jury which found in favor of defendant on evidence which sustains the verdict, and the record does not show any procedural errors which require a reversal of the case.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.